[No. 34083. Department One. July 18, 1957.]

LEE M. KOPP et al., Appellants, v. PARAMOUNT PRODUCTS CORPORATION, Respondent.

PARAMOUNT PRODUCTS CORPORATION, Respondent, v. LEE M. KOPP et al., Appellants.[1]

Casey & Pruzan, for appellants.

Preston, Thorgrimson & Horowitz, for respondent.

MALLERY, J.—The appellants were plaintiffs below in an action for the return of a down payment in the amount of three thousand dollars, which they allege was made in contemplation of a contract that was never consummated. Judgment was entered for the respondent (defendant) therein.

The respondent was plaintiff below in a separate action for the loss of profits arising out of the breach of the same contract, which it alleged was consummated, but breached by appellants (defendants). It was granted a judgment in the amount of $6,629.87 and costs.

The cases were consolidated for trial and upon appeal.

[1]Reported in 313 P. (2d) 682.

The appellants accept the trial court's findings of fact, but contend they do not support the conclusions of law and judgments herein.

The background of the consolidated actions is that the appellants wanted to build, equip, and operate a supermarket, but were inadequately financed to do so. The respondent is in the business of equipping such enterprises and wanted to sell appellants the needed equipment. To that end, it assisted them in inducing a party to build a building and lease it to them.

Most of the equipment respondent hoped to install for appellants was to be built by Hussman Refrigerator Co. of St. Louis, Missouri, hereinafter referred to as Hussman. The respondent could not carry the appellants on an open account. Accordingly, the financing of the purchase of the equipment was to be accomplished by a conditional sales contract, which respondent vendor would assign to the manufacturer, Hussman Refrigerator Co. This gave rise to a prerequisite to the consummation of a deal that appellants' credit, in the amounts provided for in the conditional sales contract, should first be approved by Hussman, otherwise it would not accept an assignment of the conditional sales contract as its pay for manufacturing the equipment. Since the title to the equipment would be the sole security for the selling price, it was necessary that the conditional sales contract be filed to prevent the sale from being absolute under the provisions of RCW 63.12.010 [cf. Rem. Rev. Stat. (Sup.), § 3790]. It was thus within the contemplation of all concerned, throughout the negotiations, that the contract, when consummated, would be in writing and filed.

The sole question in both appeals is whether or not a contract was consummated. This depends upon the existence of an offer and acceptance.

On April 15, 1955, the appellants signed a form of conditional sales contract to which a rider was attached itemizing the equipment included therein. They accompanied the contract with a check for three thousand dollars as a

down payment under the contract, which was to be returned if their *offer* was not accepted. It was understood that the respondent would not *accept* the *offer* unless and until Hussman approved appellants' credit and agreed to purchase an assignment of the contract.

Almost immediately, the appellants feared the initial monthly payments were too large and stopped payment on the check. That was the end of their first offer.

On April 26, 1955, appellants signed another conditional sales contract identical in form with the preceding one, except for the amount of the monthly installment payments provided for therein, and accompanied the instrument with a new check for three thousand dollars, subject to the previous conditions. The rider to the former conditional sales form of contract, which itemized the equipment, was detached therefrom and attached to the new conditional sales contract form. This written form of conditional sales contract will be hereinafter referred to as the April 26th offer.

On May 23, 1955, Hussman refused to accept an assignment of a contract in the form of the April 26th offer, because almost five thousand dollars worth of wooden shelving, included in the itemized list of equipment, was not to be manufactured by it. Accordingly, the respondent could not and did not accept the April 26th offer, although it retained the signed contract form.

Further negotiations were had, and appellants, at respondent's request, agreed to buy steel shelving manufactured by Hussman instead of the wooden shelving specified in their April 26th *offer*. This constituted a specific rejection of the April 26th offer by the respondent and its withdrawal by appellants. Thereafter, it was just a piece of paper in respondent's possession.

The respondent advised Hussman of appellants' willingness to buy its steel shelving in place of the wooden shelving. On June 9, 1955, Hussman wired the respondent that the appellants' credit had been approved and, on the same day, in a letter to the respondent, said, ". . . a new

contract must be executed." The respondent did not draw a new contract to provide for the sale of steel shelving in place of the wooden shelving in the withdrawn offer of April 26th. Instead, it signed and purported to accept the old April 26th offer calling for wooden shelves. This was ineffective. It could not accept an offer that no longer existed. On the same day, respondent telephoned appellant Parfitt that "the credit had been approved," to which he replied, "I will tell Kopp." This was clearly but another step in the already protracted negotiations.

The next day, the appellants notified the respondent that they had withdrawn their offer to purchase any equipment from them. They demanded the return of the down payment. It was refused, and these suits followed.

■ No subsisting offer was ever accepted in the manner contemplated by the parties and required by their plan of action for financing the deal. The result was that the negotiations ended without consummating a contract.

The respondent contends there was an oral acceptance of appellants' oral offer to buy the steel shelving and other equipment on May 9, 1955, when it telephoned appellants and said, "The credit had been approved," and Parfitt said, "I will tell Kopp." This is put upon the theory that the payment of three thousand dollars took the contract out of the statute of frauds and made it valid, even though oral.

We find no merit in the contention because (a) the language relied upon is obviously only a step in a protracted negotiation and does not constitute a sufficient offer to constitute the basis of an oral contract, and (b) the parties did not contemplate an oral contract, in any event. The court found:

"The parties contemplated that negotiations between them would culminate in a written conditional sales contract capable of being filed with the King County Auditor, which written contract would contain all of the terms agreed to by the parties, and which contract would list all of the equipment covered by the conditional sales contract, which contract would be assigned to Hussman Refrigerator Co."

The following is the theory acted upon by the trial court:

". . . The oral agreement to substitute Hussman steel shelving for Reynolds wood shelving was not a rejection of the offer of April 26, but was in fact an oral modification of that offer by mutual agreement. The intention of the parties was that an acceptance of the offer of April 26 would be an acceptance of the offer as thus modified; and the parties ceased to regard the riders attached to exhibit 3 as an accurate memorial of their agreement for shelving; and *parol testimony was therefore admissible to show the true agreement.* On June 9, 1955, plaintiffs' offer as thus orally modified was still standing, and on that date defendant accepted it by signing the acceptance form on exhibit 3, and the contract came into being. . . ." (Italics ours.)

The attempt to accept the rejected offer of April 26th for wooden shelves did not consummate a parol contract for steel shelves. The parol evidence rule does not permit a written contract to be contradicted by prior oral negotiations.

The trial court's conclusions and judgments are not supported by its findings of fact.

The judgments in both of the consolidated cases are reversed.

HILL, C. J., FINLEY, WEAVER, and OTT, JJ., concur.